65 F.3d 169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles C. SMITH, Plaintiff-Appellee,
v.
Robert A. MYERS, Defendant,
Larry Faith and Richland County, Ohio, Defendants-Appellants.
 No. 94-3605.
 United States Court of Appeals, Sixth Circuit.
 Sept. 1, 1995.
 
 Before: LIVELY, MARTIN, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claiming that the district court erred in denying their motion for summary judgment in this Section 1983 action, Captain Larry Faith of the Richland County Sheriff's Department appeals on the ground that he is entitled to qualified immunity while Richland County appeals asserting that it did not have a custom, policy, or procedure that resulted in the alleged deprivation of any of plaintiff Charles C. Smith's federal statutory or constitutional rights. Because the district court's decision denying summary judgment to Richland County is not a reviewable "final decision" under 28 U.S.C. Sec. 1291, we do not have jurisdiction over its appeal. However, Captain Faith's appeal is reviewable, and we REVERSE the decision of the district court denying him summary judgment.
 
 
 2
 On March 21, 1992, in Mansfield, Ohio, plaintiff Charles C. Smith was shot in the neck by Robert A. Myers. The bullet nicked Smith's spine rendering him paralyzed. It is undisputed that from June 5, 1989, until at least December 14, 1989, Myers, a convicted felon, worked as a paid confidential informant for a drug task force operated in part by Richland County. It is also undisputed that Captain Faith was Myers's "control" officer while Myers was working for the drug task force.
 
 
 3
 On March 19, 1993, Smith filed a complaint pursuant to 42 U.S.C. Sec. 1983 against Robert Myers, Captain Larry Faith, Richland County, the City of Mansfield, and two other police officers alleging that the defendants deprived him of his "Fourth Amendment right" because "Myers apprehended [Smith] by use of deadly force in violation of the reasonableness requirement of the Fourth Amendment." Smith averred further that all of the defendants conspired to permit Myers, whom they knew or should have known to be a convicted felon, to possess a gun in violation of Ohio's law prohibiting felons from possessing firearms. As to Richland County and the City of Mansfield, Ohio,[1] Smith claimed that he was deprived of his rights as the result of the "execution or implementation of a local governmental policy or custom adopted or established by said Defendants." Specifically, Smith argued that the City and County governments "failed to train or supervise the Defendants and that such failures were the result of deliberate indifference." Smith further asserted that as a direct and proximate result of the acts and omissions of the defendants, he was deprived of a "federally protected right" under Section 1983, was severely injured, and suffered other damages. Smith also pleaded a state law cause of action for assault and battery.
 
 
 4
 The parties submitted affidavits supporting their respective positions regarding whether and/or when Myers ceased to be a police informant and whether Faith knew Myers had obtained a firearm in violation of Ohio's law prohibiting felons from possessing firearms. On March 15, 1994, defendants Larry Faith and Richland County filed a motion claiming to be entitled to summary judgment on five grounds:
 
 
 5
 1. Robert A. Myers was not acting under color of state law.
 
 
 6
 2. Respondeat superior fails to provide a sufficient basis of liability.
 
 
 7
 3. Neither Faith nor Richland County breached a duty to Smith.
 
 
 8
 4. Faith and Richland County are entitled to qualified immunity.
 
 
 9
 5. Faith and Richland County are entitled to immunity under Ohio Rev.Code Sec. 2744 for any state law claims.
 
 
 10
 In an Order dated May 13, the district court denied the appellants' summary judgment motion on the ground that the affidavits submitted to the court created material factual questions regarding the possibility of an ongoing relationship between Myers and the drug task force, the defendants' knowledge regarding whether Myers possessed a weapon, and the possibility that Myers was coerced into signing his December 23, 1993, affidavit. The district court did not discuss the legal determinations upon which its decision to deny summary judgment rested, such as whether Smith's version of the facts showed a violation of a clearly established right by a state actor, but only discussed why it believed genuine issues of material fact existed for trial.
 
 
 11
 On appeal, Faith argues that Smith has not identified a single constitutional right that he has violated. Faith submits that Myers was not a "state actor," but a private actor who injured Smith long after his association with the drug task force ended. Faith asserts that law enforcement officers have no duty to protect a citizen from harm caused by a private actor unless a special relationship exists imposing such a constitutional duty. Faith also claims that Smith has failed to allege facts under the "heightened pleading" requirement[2] for Section 1983 cases sufficient to defeat Faith's qualified immunity from suit.
 
 
 12
 Richland County argues that in order for it to have Section 1983 liability, Smith must show that it was the "moving force" behind the federal constitutional or statutory deprivation. The County asserts that Smith has not identified what custom or policy caused any deprivation of Smith's federal rights and has not alleged facts showing it failed to adequately train or supervise personnel.
 
 I.
 
 13
 Before proceeding to the merits of the issues presented, we must first ensure that we have jurisdiction to do so. As to Captain Faith, our jurisdiction to review this appeal from an interlocutory order rests on the Supreme Court's decision in Mitchell v. Forsyth, 472 U.S. 511 (1985). Forsyth held that a district court's order denying a defendant's motion for summary judgment is an immediately appealable collateral order if the defendant is a public official asserting a defense of qualified immunity, and if the issue appealed concerns "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions."[3] Id. at 528. Although it chose not to discuss the legal foundation for its decision, in order to have denied summary judgment to Captain Faith on the qualified immunity issue the district court must have implicitly determined that Smith's version of the facts shows that Faith violated a clearly established federal right. Challenging the district court's implicit legal conclusion, Faith argues that even under Smith's version of the facts he has not violated clearly established federal law. Therefore, we have jurisdiction over Faith's appeal from the district court's collateral order because we must decide whether Smith has alleged a violation of a clearly established federal right of which a reasonable official would have known.
 
 
 14
 Contrary to its belief, Richland County is not entitled to a defense of qualified immunity because it is a local government and not a public official. Owen v. City of Independence, 445 U.S. 622 (1980) (holding that the fact that city officials acted in good faith will not protect a municipal government from Section 1983 liability); Leach v. Shelby County Sheriff, 891 F.2d 1241, 1245 (6th Cir.1989) (stating same, citing Owen v. City of Independence ). As we stated above, only individual government officials can appeal denial of summary judgment on qualified immunity grounds under the "collateral order doctrine" of Mitchell v. Forsyth.
 
 
 15
 The only way this Court could address Richland County's appeal would be pursuant to "pendant appellate jurisdiction," a doctrine this Court has not explicitly adopted. Williams v. Kentucky, 24 F.3d 1526, 1542 (6th Cir.) (stating that, although this Circuit has not adopted "pendant appellate jurisdiction" by name, it might exercise this jurisdiction in the appropriate case), cert. denied, 115 S.Ct. 358 (1994). However, our decision in Williams has since been modified by the Supreme Court in Swint v. Chambers County Comm'n, 115 S.Ct. 1203, 1210 (1995). In that case, the Supreme Court expressed its view that an appellate court's jurisdiction over appeals from denials of qualified immunity pursuant to the collateral order doctrine should not be expanded by decision, but only by statute or the Congressionally-mandated rulemaking process outlined in 28 U.S.C. Sec. 1292(e) (designating the Supreme Court's rulemaking process as the way to define what orders are "final" and when an interlocutory order is appealable). Id. at 1210.
 
 
 16
 In Swint, defendant police officers appealed the denial of their motion for summary judgment based on qualified immunity. The City and County government defendants also appealed the denial of their motions for summary judgment, arguing that the Eleventh Circuit had "pendant appellate jurisdiction" over their appeal. Recognizing that the district court's rejection of the government defendants' motions for summary judgment was not a final order, the Eleventh Circuit nonetheless exercised "pendant appellate jurisdiction" over the County Commission's appeal, dismissing the case against the county because it had decided earlier that the county sheriff was not a "policymaker." Id. at 1207. The Eleventh Circuit exercised pendant appellate jurisdiction in the interest of judicial economy, stating that "[i]f the County Commission is correct about the merits ... reviewing the district court's order would put an end to the entire case against the County." Id. at 1208. The Supreme Court reversed, stating that:
 
 
 17
 The Eleventh Circuit's authority immediately to review the District Court's denial of an individual police officer defendants' summary judgment motions did not include authority to review at once the unrelated question of the County Commission's liability. The District Court's preliminary ruling regarding the County did not qualify as a "collateral order," and there is no "pendant party" appellate jurisdiction of the kind the Eleventh Circuit purported to exercise.
 
 
 18
 Id. at 1212. It should be noted that the Supreme Court did not "definitively and preemptively" settle the question of whether an appellate court may review related rulings that are not independently reviewable. Id. However, given the Supreme Court's view that its rulemaking process is the statutorily preferred method for determining classes of interlocutory appeals which may be considered "final decisions," Id. at 1210, an appellate court should be hesitant to expand its jurisdiction by decision.
 
 
 19
 In light of Swint, we believe we cannot exercise "pendant appellate jurisdiction" because the district court's denial of summary judgment to Richland County is not a final decision that meets the criteria to qualify as an appealable collateral order. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47 (1949) (holding that only conclusive decisions resolving important questions separate from the merits that are effectively unreviewable on appeal from the final judgment may be considered "final orders"). Specifically, the district court's decision denying Richland County summary judgment on the merits will be reviewable if it comes to us on appeal from the final judgment. Cohen, 337 U.S. at 546. Therefore, even though "pendant appellate jurisdiction" in this case might serve the interests of judicial economy, we cannot exercise it.
 
 II.
 
 20
 We review de novo the district court's legal determinations in denying summary judgment to a government official based on qualified immunity. Williams, 24 F.3d at 1532 (citing Walton v. City of Southfield, 995 F.2d 1331, 1335 (6th Cir.1993)). Here, we examine only the legal question of whether Smith's complaint and affidavits allege and support his claim that Faith violated his clearly established Fourth Amendment right to be free from unreasonable seizures. In this regard, we have said that the key inquiry upon a motion for summary judgment based on qualified immunity is "whether the defendant's alleged conduct violated clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." Adams v. Metiva, 31 F.3d 375, 386 (6th Cir.1994) (citing Anderson v. Creighton, 483 U.S. 635, 638 (1987)).
 
 
 21
 Until oral argument, Smith's legal theory of Section 1983 liability against Captain Faith was twofold. First, Smith claimed that Myers, a state actor by virtue of his position as a police informant, violated his clearly established Fourth Amendment right not to be seized in violation of that Amendment's reasonableness clause. However, at oral argument, Smith conceded that Myers was not a state actor. If Myers is not a state actor, then Faith cannot be liable under Section 1983 in his capacity as a supervisor. Relying on the Supreme Court case of Rizzo v. Goode, 423 U.S. 362 (1976), we stated in Leach v. Shelby County that supervisory liability under Section 1983 cannot be based on respondeat superior. "Instead, officials should be personally liable in damages for their own unconstitutional behavior." Leach, 891 F.2d at 1246; see also Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir.), cert. denied, 459 U.S. 833 (1982) (stating that "[t]he law is clear that liability of supervisory personnel must be based on more than merely the right to control employees."). Faith, however, cannot be liable for his own actions as a supervisor if Myers is not a state actor or state employee. We will address Smith's remaining theory of Section 1983 liability against Faith.
 
 
 22
 Smith's second theory of liability is that Captain Faith had a duty to protect him from Myers, a private citizen. Smith argues that there was a "special relationship" between Faith and the County because the defendants knew that Myers was a former police informant, knew Myers was an "unstable and dangerous" person, and knew that Myers was a felon in possession of a gun. Smith further contends that Ohio Rev.Code Sec. 2935.03 requires the police to arrest felons who possess firearms. Thus, Smith reasons that because Faith wilfully disobeyed state law and did not arrest Myers, Faith failed to protect him from this foreseeable crime. Citing DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195 (1989), Smith argues that Faith (and the County) intentionally created the danger that Myers would shoot somebody by turning a blind eye to Myers's gun ownership and therefore had a legal duty to protect him from Myers.
 
 
 23
 If Faith, in his capacity as a police officer, had a duty to protect Smith, and failed to do so, then he may have violated a constitutional right of Smith's. However, this Circuit has held that the state's duty to protect any particular citizen arises only where a "special relationship" exists between the state and that citizen. Gazette v. City of Pontiac, 41 F.3d 1061, 1065 (6th Cir.1994) (citing DeShaney, 489 U.S. at 195). Thus far, we have determined that a "special relationship" exists only where the state legally restricts the liberty of a person, such as when the state incarcerates someone or involuntary commits a person to a healthcare facility. Id. (citations omitted). In Foy v. City of Berea, 58 F.3d 227, 230-31 (6th Cir.1995), we stated that "[t]he affirmative duty to protect arises only when the state imposes limitations on an individual's 'freedom to act on his own behalf.' Mere knowledge of danger to the individual does not create an affirmative duty to protect." Id. at 230 (citing DeShaney, 489 U.S. at 200). Because Smith was not in the state's custody, no special relationship between the state and Smith existed giving rise to a duty to protect Smith from Myers. Further, assuming that Faith knew of the danger to Smith, this knowledge did not impose upon Faith a duty to protect Smith.
 
 
 24
 We have also held that police officers are not liable under Section 1983 if they fail to protect a citizen who is not in custody. As a general principle, we stated in Janan v. Trammell, that "there is no constitutional right to be protected by the state against being murdered by criminals or madmen," 785 F.2d 557, 560 (6th Cir.1986) (citing Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir.1982)). Later, in Tucker v. Callahan, we held that a police officer who witnessed the beating of one citizen by another, who knew of the dangerousness of the parking lot where the beating occurred and of the assailant's violent nature, but who did nothing to intervene and stop the assault, had not violated any constitutional right of the plaintiff because no special relationship existed between the plaintiff and the state. 867 F.2d 909, 912-13 (6th Cir.1989). In Tucker, we held that a duty to protect did not exist even though the City had entered into an agreement with the parking lot owners to provide police protection. This additional fact did not cause us to believe that the City had a "special relationship" with persons using that lot that was distinguishable from its relationship with the general public.
 
 
 25
 We believe that this case is controlled by Tucker. Here, however, Smith's argument that a "special relationship" existed is even weaker. Smith was not in the County's custody at the time of the shooting. Also, the County did not agree to provide Smith with particularized police protection. The County, and therefore Faith, owed Smith only the law enforcement duty it owed to the general public. Further, Smith does not allege that Faith was present at the shooting or that Faith knew Myers was going to shoot him. Even if Faith had been present at the shooting, our holding in Tucker makes clear that Faith would not have violated any of Smith's constitutional rights if he had taken no action to prevent Myers from shooting Smith.
 
 
 26
 Based on the foregoing, we REVERSE the decision of the district court denying summary judgment to Faith. As to Richland County, we DISMISS its appeal.
 
 
 
 [1]
 The City of Mansfield is not involved in this appeal
 
 
 [2]
 In Leatherman v. Tarrant County Narcotic Intelligence and Coordination Unit, 113 S.Ct. 1160, 1161 (1993), the Supreme Court held that a federal court may not impose a " 'heightened pleading standard'--a standard more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)--in civil rights cases alleging municipal liability under Section 1983." However, the Supreme Court also stated that it has not had occasion to consider whether its "qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." Id. at 1162. Because we have resolved this case on other grounds, it is unnecessary for us to decide whether a heightened pleading standard applied to Smith's complaint against Faith
 
 
 [3]
 In a Section 1983 case, the plaintiff must show that the defendant violated a clearly established federal statutory or constitutional right
 42 U.S.C. Sec. 1983 provides:
 Every person who, under color of any [state law], subjects ... any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 As the Supreme Court has observed, the purpose of Section 1983 is to provide a cause of action for persons deprived of federal statutory or constitutional rights by state actors. Wyatt v. Cole, 504 U.S. 158, 161-62 (1992). If a plaintiff claims that a state actor deprived her of a right secured under state law, Section 1983 cannot be invoked to provide a cause of action for that plaintiff.