*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LOUIS MITCHELL and BETTY FOSTER, as parents and
next friends of DANIEL MITCHELL, deceased,
                              *Plaintiffs-Appellants,*

        *v.*

MARKUS MCNEIL a.k.a. MARCUS MCNEIL; MYRON
MYLES; DRESSELS FOX; PATRICK B. FOX; JAMES H.
BOLDEN, JR.; BOBBY TODD; MEMPHIS, LIGHT, GAS
& WATER; MEMPHIS POLICE DEPARTMENT; CITY OF
MEMPHIS; and John Doe,
                              *Defendants-Appellees.*

No. 06-5631

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 05-02221—Samuel H. Mays, Jr., District Judge.

Submitted: April 19, 2007

Decided and Filed: May 15, 2007

Before: SUTTON and COOK, Circuit Judges; GWIN, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Jeffrey S. Rosenblum, Marc E. Reisman, ROSENBLUM & REISMAN, Memphis,
Tennessee, for Appellants. Lori Hackleman Patterson, ALLAN J. WADE, PLLC, Memphis,
Tennessee, Jean E. Markowitz, Thomas Edwards Hansom, LAW OFFICES OF THOMAS E.
HANSOM, Memphis, Tennessee, Henry L. Klein, APPERSON, CRUMP & MAXWELL, Memphis,
Tennessee, for Appellees.

---

## OPINION

---

    SUTTON, Circuit Judge. At the heart of this dispute is the claim that the City of Memphis,
several of its agencies and several of its police officers violated the substantive due process rights
of Daniel Mitchell when they permitted a police officer to loan a personal vehicle to an informant

---

[*]The Honorable Judge James Gwin, United States District Judge for the Northern District of Ohio, sitting by
designation.

who subsequently collided with—and killed—Mitchell while driving the vehicle. The district court concluded that the allegations did not state a cognizable substantive due process claim, and we agree.

## I.

At 6:45 p.m. on February 18, 2004, Daniel Mitchell attempted to cross North Watkins Street in Memphis, Tennessee. As the 12-year-old boy started across the street at its intersection with Rugby Place, a large, white vehicle traveling northbound struck Mitchell and knocked him into another vehicle—coming from the opposite direction and driven by Myron Myles. Medical evidence indicated that Mitchell could have survived the initial impact alone, but the combination of impacts proved too much, and he died from the accident.

While the driver of the large, white vehicle attempted to avoid responsibility for the accident, the police learned that the vehicle was owned by a Memphis Police Officer (either Officer Dressels Fox or Officer Patrick Fox), and that the driver was Markus McNeil—a police informant with permission to use the vehicle. Memphis police officers, Mitchell's parents later learned, occasionally loaned their personal vehicles to informants in exchange for information. James Bolden (the former director of the Memphis Police Department), Bobby Todd (an inspector with the Memphis Police Department) and the City of Memphis knew about and permitted this practice.

Mitchell's parents filed this lawsuit in state court against a number of parties, including McNeil, Myles, the Fox brothers, Bolden, Todd, the Memphis Police Department and the City of Memphis. The complaint raised several negligence claims under state law along with federal constitutional claims under 42 U.S.C. § 1983. As to the federal claims, plaintiffs alleged that the defendants (1) conspired to violate Mitchell's "constitutional rights under the Fourth and Fourteenth Amendments" by engaging in the "practice of encouraging police officers to provide automobiles to informants with known histories of drug and alcohol use," Complaint ¶ 38(i), (2) violated his constitutional rights by failing "to properly investigate [the] accident," *id*., and (3) violated his parents' "separate constitutional right to have their son's death properly investigated," *id*. ¶ 38(m).

With the consent of the other defendants, the City of Memphis removed the case to federal court. The district court granted the defendants' motion to dismiss the federal claims as a matter of law, *see Mitchell v. McNeil*, No. 05-2221 Ma/V, 2006 WL 889370, at *1 (W.D. Tenn. Mar. 30, 2006), and remanded Mitchell's state-law claims to state court, *see Mitchell v. McNeil*, No. 05-2221 Ma/V, 2006 WL 1174461, at *1 (W.D. Tenn. May 1, 2006).

## II.

We give fresh review to a district court's decision to dismiss a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 901 (6th Cir. 2003). And we treat "all well-pleaded allegations in the complaint" as true and will affirm the dismissal "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003) (internal quotation marks omitted).

The constitutional claims against the city and its agencies implicate different liability standards from the claims against the individual defendants. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a local government may be held liable under § 1983 only for adopting a "policy or custom" that violates federally protected rights, *id*. at 694. Under *Saucier v. Katz*, 533 U.S. 194 (2001), government officials sued in their individual capacities may be held liable under § 1983 when they violate constitutional rights that are "clearly established," *id*. at 201. Linking the two standards is the requirement that plaintiffs allege a cognizable constitutional claim. *See Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005).

In their complaint, plaintiffs allege a variety of constitutional violations. In challenging the district court's decision, however, plaintiffs have whittled their grievances down to two theories—that the defendants violated substantive due process (1) by permitting officers to lend their personal cars and trucks to informants and (2) by inadequately investigating the accident.

The standard for establishing that executive-branch officials (as well as executive-branch agencies) have violated an individual's substantive due process rights is not an easy one to satisfy. "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Concerned that the Due Process Clause of the Fourteenth (and Fifth) Amendment not become a "font of tort law to be superimposed upon whatever systems may already be administered by the States," *Paul v. Davis*, 424 U.S. 693, 701 (1976), the Supreme Court has made it clear that mere negligence on the part of governments and their agents does not provide plaintiffs with a ticket to federal court to seek substantive due process relief, *id.*; *Daniels v. Williams*, 474 U.S. 327, 332 (1986); *cf. DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989) (observing that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors" and that the Due Process Clause does not guarantee "certain minimal levels of safety and security").

To state a cognizable substantive due process claim, the plaintiff must allege "conduct intended to injure in some way unjustifiable by any government interest" and that is "conscience-shocking" in nature. *Lewis*, 523 U.S. at 849; *see Stemler v. City of Florence*, 126 F.3d 856, 869 (6th Cir. 1997); *Lewellen v. Metro. Gov't of Nashville & Davidson County*, 34 F.3d 345, 350–51 (6th Cir. 1994). The Mitchells' complaint does not meet this requirement with respect to either of their substantive due process theories.

As to their first theory, the Mitchells claim that the defendants had a "custom" of "encouraging police officers to provide automobiles to informants with known histories of drug and alcohol use, thereby placing the public at large, and Daniel Mitchell in particular, in severe danger." Complaint ¶ 38(i); Br. at 14. While the defendants deny that any such "custom" exists, we must accept this allegation as true given the pleading-stage nature of this dispute. We also will accept something else as true for purposes of resolving this case—that this is a strange policy, one that the city, its agencies and employees do not defend on its merits (except to say that it does not exist).

Strange though such a policy may be, its mere existence without more does not state a cognizable due process claim. For one, while plaintiffs allege that the policy placed individuals in danger, they never allege that the policy did so intentionally or recklessly. For another, even the most well-reasoned, insightful and far-sighted of law enforcement policies may place the public in danger. Consider a policy that says police should not fire their weapons at an armed and dangerous, fleeing suspect when the suspect enters a crowded area. Much as that sensible policy would protect many individuals from harm, it also would place other individuals (though fewer individuals) at risk.

Nor do plaintiffs make any allegations about the policy that would allow one to infer that the city defendants acted with intentional or reckless indifference to the safety of the public in adopting the policy—by, for example, pointing out that it had led to tragic accidents in the past. The same is true of their filings in the district court and this court. At no point do they identify any cases dealing with informant policies that remotely suggest that this policy would enter the forbidden world of conscience-shocking conduct. *Cf. Hiser v. City of Bowling Green*, 42 F.3d 382, 384 (6th Cir. 1994) (holding that plaintiff failed to state a cognizable substantive due process claim where officers had encouraged an informant to move in with plaintiff and her boyfriend—the target of a drug investigation—and the informant murdered plaintiff); *Smith v. Myers*, No. 94-3605, 1995 WL 521158, at *6 (6th Cir. Sept. 1, 1995) (holding that plaintiff did not state a cognizable substantive

due process claim where the officer knew the informant was a felon in possession of a gun and the informant shot plaintiff in the neck during a drug sting).

The policy of allowing informants to drive an officer's private vehicle also does not have an inherently dangerous quality to it. Yes, the policy makes it likely that the informant will drive the vehicle, but that does not make it likely that the informant will cause an accident. If the risk is that informants who are drug addicts are more likely to cause accidents than teetotaling informants, that also does not make the city's policy a constitutionally problematic one. First of all, the complaint makes no allegation that this informant had any such addiction. Second of all, police engage in far more risky conduct with informants that has long been an accepted feature of sound (though dangerous) police work. *See, e.g.*, *Hiser*, 42 F.3d at 383 (using informant to investigate drug distribution ring and urging him to move in with plaintiff, whom he subsequently murdered); *Smith*, 1995 WL 521158, at *1 (using informant during a drug sting even though police knew he possessed a gun).

If, as plaintiffs allege, it shocks the judicial conscience for the police "to provide automobiles to informants with known histories of drug and alcohol use," then it would surely shock the same conscience to permit the police (1) to look the other way when informants buy and sell drugs and guns illegally in the course of a sting operation or (2) to enable that work by supplying the drugs and guns for them. But these and other, far-more-dangerous practices are a reality of the gray world of police-informant interactions, a form of cooperation that appears to be an indispensable feature of respected law-enforcement work. While we doubt that the City of Memphis has ever made it a practice to use only Eagle Scouts (or like-minded citizens) as its informants, we have little doubt about the limits of such a policy and little doubt about whether it would break open as many drug-distribution rings as a policy that tolerates the use of criminals as the city's informants.

The point of law enforcement is to protect the public. So long as the use of informants with criminal proclivities has the potential to protect more people than it puts at risk, one cannot state a substantive due process claim simply by alleging that the practice exists, by alleging that the police followed the practice (by supplying a car, drugs or a weapon) and by alleging that the car, drugs or weapon contributed to the injury. Something more must be alleged to show the "deliberate indifference" that the law requires. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997).

Plaintiffs do no not help themselves when they persist that "[i]t is certainly foreseeable that allowing an informant (who likely has also engaged in illegal conduct) to borrow a vehicle, could result in an accident or even the death of an innocent person." Br. at 16. The possibility that someone might be hurt by this policy of course states only a claim of negligence, which does not suffice to sustain this § 1983 action. *See id.*; *Daniels*, 474 U.S. at 332; *Paul*, 424 U.S. at 701; *Stemler*, 126 F.3d at 869.

Equally unavailing is plaintiffs' second theory of due process liability—that the defendants failed to investigate the accident adequately. There is no statutory or common law right, much less a constitutional right, to an investigation. *Cf. Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (observing that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). But even if there were such a right, plaintiffs would face at least two other difficulties: (1) the absence of an investigation *after* the accident could not plausibly be the cause of this accident; and (2) the complaint nowhere alleges, or permits the inference, that the defendants limited the scope of the investigation for intentional, malicious or reckless reasons.

In their appellate papers, plaintiffs come close to recognizing much of this—disclaiming "that the City or its officers had a constitutional duty to conform their investigation to the Appellants' desires and/or dictates." Br. at 12–13. They then argue that this claim really amounts

to an effort to vindicate their right of access to the courts. Plaintiffs, however, did not raise this claim below, much less plead it in their complaint, and accordingly it has been waived. *See J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991).

Because the district court correctly concluded that plaintiffs' allegations failed to state a claim as a matter of law, it follows that the district court did not err in granting defendants' Rule 12(b)(6) motion before permitting discovery by plaintiffs. It is well established that "there is no general right to discovery upon filing of the complaint." *Yuhasz*, 341 F.3d at 566. "[T]he very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Id.* (internal quotation marks omitted). Here, moreover, plaintiffs did obtain some discovery, just not as much as they would have liked. The salient point is that, when plaintiffs file a complaint that fails to state a claim as a matter of law, they cannot be heard to complain about not being provided additional discovery. In the absence of a cognizable claim, they have no right to any discovery—whether the claim arises in the context of qualified immunity (as here) or not.

III.

For these reasons, we affirm.