**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0275n.06

**No. 12-1774**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

GUADALUPE LINDA GARCIA,                    )

      Plaintiff-Appellant,                    )

                          )

v.                    )  ON APPEAL FROM THE UNITED

                          )  STATES DISTRICT COURT FOR

                          )  THE WESTERN DISTRICT OF

MATTHEW THORNE,                    )  MICHIGAN

                          )

      Defendant-Appellee.                    )

**FILED**

***Mar 19, 2013***

DEBORAH S. HUNT, Clerk

**Before:**    **MARTIN and GILMAN, Circuit Judges; and FOWLKES, District Judge.**[*]

    **BOYCE F. MARTIN, JR., Circuit Judge.**  Guadalupe Linda Garcia sued Officer Matthew Thorne of the Mason Police Department, alleging false arrest, violation of her substantive due process rights, malicious prosecution, retaliation, and abuse of process. Thorne moved for summary judgment on all claims, and the district court granted his motion. For the reasons that follow, we **AFFIRM** the judgement of the district court.

I.

    On March 17, 2008, the Mason Police Department responded to a breaking and entering at a home in Mason, Michigan. During the course of the investigation, Garcia's fifteen-year-old son, Chaz Smith, became a suspect. On March 24, 2008, Officer Thorne requested a warrant from the

---

[*] The Honorable John T. Fowlkes, United States District Judge for the Western District of Tennessee, sitting by designation.

Ingham County Prosecutor's Office. In the warrant request, Thorne cited Chaz for second-degree home invasion, and he noted that the crime is a felony. On March 27, 2008, Assistant Prosecuting Attorney Patricia Esch authorized the warrant, and because Chaz was a juvenile, the state court's family division issued an apprehension order. In the authorization section of the warrant request, Esch cited Chaz for second-degree home invasion and also indicated that the crime is a felony.

Thorne called Garcia's mobile and home phones several times in an attempt to apprehend Chaz. According to Garcia, Thorne made calls at inappropriate hours. In her complaint, she claims that Thorne called her home telephone on April 1, 2008 at approximately 3:00 a.m., and that she told Thorne to leave her son alone. Garcia also claims that Thorne called her home and mobile phones on April 10, 2008 between 1:00 a.m. and 4:00 a.m. According to Thorne, Garcia refused to give Thorne her current address. Apparently, neither Thorne nor anyone in the Mason Police Department knew Garcia's address, but at some point Thorne obtained information that she had moved from Mason to the south side of Lansing, Michigan.

Thorne had at least one interaction with Garcia prior to his attempts to arrest Chaz. Around 2005, Garcia had a domestic dispute with her then boyfriend and former Lansing Police Officer Rob Vargas. According to Garcia, Vargas broke into her home and assaulted and raped her. She called the Mason Police Department to report the incident and Thorne arrived at the scene. Garcia felt as if Thorne did not take her complaint seriously and that he blamed her for the dispute. According to Garcia, Thorne told her that she should leave Vargas alone. In Thorne's 2008 Incident Report concerning his attempts to apprehend Chaz, he noted that "[i]t is known through many contacts with [Garcia] that she is very anti-police."

On April 3, 2008, Garcia visited Matt Stuard, the Program Coordinator at Chaz's school, Mason Summit High School, in order to talk about Chaz's absence from school. Stuard sent an email to the school's Resource Officer, Steve Chick, explaining what took place during the meeting with Garcia. According to Stuard's email, Garcia explained that Chaz was having "legal problems" and that there was a warrant for his arrest. Garcia also told Stuard that she did not see the point of having Chaz return to the school in light of the fact that "he was going to be taken in anytime."

On April 10, 2008, Thorne spoke to Chaz over the telephone and informed him that an apprehension order had been issue for his arrest. According to Thorne, Chaz agreed to turn himself in on April 14, 2008. On April 14, 2008, when Thorne arrived at work, Department secretary Jan Lifsey told him that Garcia had contacted the Department stating that Chaz would not be turning himself in and complaining that Thorne had been calling her in the early morning hours. Later that day, Thorne contacted Stuard, who told Thorne that Chaz had not been in school since March 31, 2008 and that Garcia said that she knew the Department wanted to arrest Chaz. According to Garcia, sometime between 1:00 and 4:00 am on April 15, 2008, Thorne called her and threatened her with criminal charges.

On April 15, 2008, Thorne submitted a warrant request for Garcia to the Prosecutor's Office, citing her for harboring a felon. The warrant request listed the location of the crime as the City of Mason and listed Garcia's address as being in Mason. On April 16, 2008, instead of authorizing a warrant for harboring a fugitive, the Prosecutor's Office authorized a warrant for misdemeanor truancy. According to Thorne's Incident Report, he obtained Garcia's Lansing, Michigan address on April 16, 2008. The Lansing Police Department executed the warrant the same day and

transferred Garcia into Thorne's custody. The police arrested Chaz on April 17, 2008. Garcia was in county jail for less than a full day, and a little over a month after her arrest, the prosecutor filed a *nolle prosequi* and dismissed the truancy charges. Garcia filed the instant suit on April 10, 2011.

Garcia brought six claims against Thorne under 42 U.S.C. § 1983: (1) false arrest; (2) violation of her substantive due process rights; (3) malicious prosecution; (4) retaliation; (5) abuse of process; and (6) exemplary damages. Thorne moved for summary judgment, and the district court granted the motion as to all claims and noted that Garcia improperly brought exemplary damages as a claim. Garcia appeals the district court judgment.

## II.

We review a district court's grant of summary judgment de novo. *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (citation omitted). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "While all inferences are drawn in favor of the non-moving party, that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment." *Tucker v. Tennessee,* 539 F.3d 526, 531 (6th Cir. 2008) (citations omitted).

## III.

Garcia claims, on false arrest and malicious prosecution theories, that Thorne violated her Fourth Amendment right to be free from an unlawful seizure. To state a claim of false arrest, a plaintiff must show that the arresting officer lacked probable cause to arrest her. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citing *Voyticky v. Village of Timberlake*, Ohio, 412 F.3d 669, 677 (6th Cir. 2005)). We are willing to assume that Garcia may bring this claim against Thorne in spite of the fact that Thorne was not the arresting officer and that the Prosecutor's Office authorized a warrant for Garcia's arrest based a truancy charge, which is not the charge upon which Thorne sought to have Garcia arrested. To state a claim for malicious prosecution, a plaintiff must show that the arresting officer lacked probable cause to seek the initiation of criminal proceedings against her. *Id*. at 310–11 (citing *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)). We are willing to assume that Garcia may bring this claim against Thorne because it is likely that, as the investigating officer, Thorne influenced the decision to prosecute Garcia. *Id*. at 311.

Garcia argues that there could not have been probable cause to arrest her or to initiate criminal proceedings against her for the crime of harboring a felon because Thorne knew or should have known that because Chaz was a minor, he would not be charged as an adult and therefore would not be charged with a felony. Garcia does not dispute that she was indeed harboring Chaz. In order to make a finding of probable cause, we consider the totality of the circumstances and whether the facts and circumstances of which Thorne had knowledge at the time of the arrest were sufficient to warrant a prudent person in believing that Garcia had committed an offense. *Id*. at 306 (citation omitted). The arresting officer's actual motives are irrelevant to the probable cause

analysis. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (citing *Scott v. United States*, 436 U.S. 128, 138 (1978)).

Thorne had probable cause to believe that Garcia had committed the crime of harboring a felon. Garcia argues that the family court's issuance of the warrant for Chaz's arrest is a clear indication that Chaz would not be charged as an adult. Although it is true that the family division of the Michigan Circuit Court has exclusive jurisdiction in dealing with juveniles, Mich. Comp. Laws § 712A.2, judges may waive this jurisdiction in cases involving juveniles age 14 and older who commit crimes that would be a felony if committed by an adult. Mich. Comp. Laws § 712A.4(1); *see also People v. Hana*, 504 N.W.2d 166, 168–69 (Mich. 1993). Chaz's crime, second-degree home invasion, is a felony for adults and he was 15 years old at the time. Additionally, in authorizing Thorne's warrant request for Chaz, Assistant Prosecutor Esch indicated that Chaz's crime was a felony. Thorne's knowledge at the time of Garcia's arrest was sufficient to warrant a prudent person in believing that Garcia had committed the crime of harboring a felon.

Next, Garcia argues that Thorne lacked probable cause because he made material false statements in the warrant request when he stated that the crime, harboring a felon, took place in Mason and that Garcia's last known address was a Mason address. With regard to the false-statement claim, Garcia must prove by a preponderance of the evidence that, in order to procure the warrant, Thorne "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood' and 'such statements or omissions [we]re material, or necessary, to the finding of probable cause.'" *Sykes*, 625 F.3d at 305 (quoting *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000) (citation omitted)). Thorne obtained Garcia's Lansing

address on April 16, 2008, but he testified that he knew Garcia moved to Lansing prior to that date. Garcia alleges that Thorne obtained her Lansing address on April 10, 2008. Viewing the facts in the light most favorable to Garcia, the Court will assume that Thorne knew that Garcia lived in Lansing at the time that he submitted the warrant request, and that he knowingly and deliberately made false statements when he alleged that Garcia's last known address was a Mason address and that Mason was the location of the crime.

Even though Thorne knowingly and deliberately lied about Garcia's address and the location of the crime, his statements were not material to a finding of probable cause. Section 750.199(3) of the Michigan Compiled Laws explains that "a person who knowingly or willfully conceals or harbors for the purpose of concealment from a peace officer" someone who is subject to an arrest warrant or bench warrant for a felony is guilty of a felony. Mich. Comp. Laws § 750.199(3). Statements regarding Garcia's knowing or willful concealment of Chaz or about Chaz's arrest warrant for a felony would be material to a finding of probable cause for the crime of harboring a felon. Garcia does not allege that Thorne made false statements concerning Garcia's knowing or willful concealment of Chaz or about Chaz's arrest warrant for a felony in the warrant request. Thorne's false statements about the location of the crime and Garcia's address are, at most, material to a finding of the Mason Police Department's jurisdiction over the matter. It is not material to a finding of probable cause that Garcia was committing the crime of harboring a felon.

Even if this Court were to find that Thorne lacked probable cause in seeking Garcia's arrest, Thorne is entitled to qualified immunity. Police officers are entitled qualified immunity unless there is such an utter lack in probable cause that no officer of reasonable competence would have

concluded that a warrant should issue. *Hutsell v. Sayre*, 5 F.3d 996, 1003 (6th Cir. 1993) (citing *Malley v. Briggs*, 475 U.S. 335 (1986); *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989)). In other words, if we find that Thorne lacked probable cause, we turn to the question of whether Thorne made a reasonable mistake of law. If Thorne made a mistake of law, it was a reasonable mistake given that, at the time he submitted the warrant request, he knew that: (1) Garcia admitted to both the Mason Police Department and an official at Chaz's school that she was aware that there was a warrant for Chaz's arrest; (2) Garcia told the Mason Police Department that she advised her son not to turn himself in; and (3) the warrant for Chaz was for a felony crime.

IV.

Garcia claims that Thorne violated her Fourteenth Amendment substantive due process rights by: (1) repeatedly calling Garcia's mobile and home phones during unreasonable hours after being told to stop and even after Garcia complained to the Mason Police Department; (2) intentionally submitting a warrant request for an alleged offense outside of his jurisdiction; and (3) intentionally submitting a warrant request for an offense for which probable cause did not exist. The Fourteenth Amendment's Due Process Clause has a substantive component that guarantees "'protection of the individual against arbitrary action of government.'" *Jones v. Byrnes*, 585 F.3d 971, 976 (6th Cir. 2009) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). Garcia must show that Thorne's conduct was so arbitrary as to "shock the conscious." *Id.* (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)); *see also Draw v. City of Lincoln Park*, 491 F.3d 550, 556 (6th Cir. 2007) (stating that "police conduct must be truly extraordinary in nature to qualify as 'conscience shocking'" and conduct that showed "incredibly poor judgment" did not meet this standard).

Taking Garcia's allegations regarding the hour and frequency of Thorne's phone calls as true, although she has not produced any evidence substantiating the allegations and Thorne has produced phone records proving that no such calls were made using his official police mobile phone, the calls do not shock the conscience. This Court has employed a very high standard when determining whether police action shocks the conscience. For example, in *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 725-26 (6th Cir. 1996), where public school students claimed that a teacher physically abused and sexually harassed them, we determined that the slapping of a student's face without causing physical injury, while inappropriate, did not shock the conscience. We also held that the teacher's rubbing of a student's stomach, accompanied by a remark that could be interpreted as sexually suggestive, while wholly inappropriate, did not shock the conscience. *Lillard*, 76 F.3d at 726. In *Mitchell v. McNeil*, 487 F.3d 374, 376-77 (6th Cir. 2007), the parents of a twelve-year-old boy alleged in the complaint that city police officials violated their substantive due process rights and those of their child by permitting a police officer to lend his personal vehicle to an informant who subsequently hit and killed their son with the vehicle. We held that the complaint's allegations did not allege conscience-shocking conduct even though the complaint alleged a city custom of "encouraging police officers to provide automobiles to informants with known histories of drug and alcohol use." *McNeil*, 487 F.3d at 377. We noted that while such a policy may be "strange," it was not conscience shocking. *Id*.

Here, while making phone calls to the mother of a suspected felon between the hours of 1:00 a.m. and 4:00 a.m. arguably shows poor judgment on the part of Thorne, such behavior does not shock the conscience. Nor does Thorne's having intentionally submitted a warrant request for an

alleged offense outside of his jurisdiction shock the conscience because he did not make the arrest himself. Once he obtained Garcia's Lansing address, he allowed officers with the Lansing Police Department to arrest Garcia. Finally, Garcia's allegation that Thorne intentionally submitted a warrant request for an offense for which probable cause did not exist is unpersuasive because we have already determined that probable cause did exist.

V.

Garcia argues that Thorne violated her First Amendment right to be free from retaliation for expressing her criticism of Thorne when Thorne: (1) called Garcia on April 15, 2008, between 1:00 am. and 4:00 a.m.; and (2) submitted the warrant request seeking criminal charges against Garcia. To establish a retaliation claim under the First Amendment, Garcia must show that: (1) she was engaged in constitutionally protected activity; (2) Thorne's adverse action caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of her constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (citations omitted).

Thorne argues that Garcia has not established that the phone calls made the morning of August 15, 2008 or the decision to seek criminal charges against Garcia were motivated in part by Garcia's complaint that Thorne repeatedly called her at irregular hours. If a defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). The plaintiff must point to specific, nonconclusory evidence reasonably linking her speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). "Temporal proximity, standing alone, is

insufficient to establish a causal connection for a retaliation claim." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) (citations omitted).

Garcia contends that, in addition to the temporal proximity between her complaint and Thorne's April 15, 2008 call, Thorne's statements in his Incident Report describing her as "anti-police" and his comments to her during their interaction in 2005 create an inference of retaliation on his part. It is unclear whether Thorne's description of Garcia as anti-police was in reference to his communications with Garcia in the past or to his communications with Garcia as he attempted to apprehend Chaz. Nonetheless, Thorne describing Garcia as anti-police is not an indication that he retaliated against Garcia. Thorne's Incident Report went on to explain the ways in which Garcia was hostile to him, and Garcia admitted to having some "choice words" for Thorne during at least one phone conversation. No one could reasonably infer from Thorne's comments an intention or desire to retaliate against Garcia. Moreover, this Court is not willing to view Thorne's comments to Garcia during the 2005 encounter, which involved a completely unrelated event that took place approximately three years prior to Garcia's complaint, as comments creating an inference of retaliation.

Thorne's phone call on April 15, 2008 and his decision to pursue criminal charges against Garcia were not acts of retaliation. Regarding the phone call, Garcia's complaint alleges that Thorne made early morning phone calls to her on at least two occasions prior to the April 15 phone call. Even assuming that Thorne had a pattern of calling Garcia during the early morning hours, however unwise and inappropriate the phone calls might have been, such calls are not evidence that Thorne's

call on April 15 was in retaliation for her informal complaint; rather, they are evidence of the continuation of an already established pattern of behavior.

As to Garcia's claim that Thorne retaliated by pursuing criminal charges and seeking an arrest warrant, the Supreme Court has held that the lack of probable cause is highly probative, if not dispositive, of the existence of a retaliatory motive. *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006). Along those same lines, it is arguable that the existence of probable cause indicates a lack of retaliatory motive. We have already established that Thorne had probable cause in seeking to obtain an arrest warrant for Garcia. Moreover, it is likely that Thorne sought the warrant for Garcia's arrest the day after Garcia made her complaint because, in addition to complaining about Thorne's phone calls, Garcia also revealed that she did not intend to allow Chaz to turn himself in. Although summary judgment is generally not well suited for cases in which motive and intent are at issue and in which the alleged wrongdoers are in control of the proof, *Perry v. McGinnis*, 209 F.3d 597, 600–01 (6th Cir. 2000) (citing *Cooper v. North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986)), this is a case where summary judgment is appropriate given that we have already determined that Thorne had probable cause for seeking Garcia's arrest and that Thorne's challenged behavior is part of an established pattern of behavior in which Thorne engaged prior to Garcia's protected action.

VI.

Finally, Garcia accuses Thorne of abuse of process. The Sixth Circuit has not "specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983." *Voyticky*, 412 F.3d at 676. Still, we have resolved section 1983

abuse-of-process claims without deciding whether such a claim is cognizable and, in doing so, we typically assume that the elements would likely mirror those of state law. *Id.* at 676–77.

In Michigan, to establish a claim for abuse of process, a plaintiff must prove: "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 312 N.W.2d 585, 594 (Mich. 1981) (citation omitted). For an abuse-of-process claim, the misconduct "is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Id.* at n.18 (quoting Restatement (Second) of Torts § 682 cmt. a (1977)). Garcia's abuse-of-process claim against Thorne fails because Thorne's behavior has to do with the initiation of criminal proceedings, not the misuse of process. *Spear v. Pendill*, 130 N.W. 343, 344 (Mich. 1911) (stating that the abuse-of-process cause of action "lies for the improper use of process after it has been issued, not for maliciously causing it to issue").

For the aforementioned reasons, the judgment of the district court is **AFFIRMED**.