**Laurencio Bautista CRUZ, Plaintiff,**

v.

**DON PANCHO MARKET, LLC,
et al., Defendants.**

No. 1:15–cv–698

United States District Court,
W.D. Michigan, Southern Division.

Signed March 18, 2016

Christopher James Acklin, Robert Anthony Alvarez, Avanti Law Group PLLC, Wyoming, MI, for Plaintiff.

Collin Harold Nyeholt, Joni Marie Fixel, Fixel & Nyeholt, PLLC, Okemos, MI, for Defendants.

**ORDER FINDING DEFENDANTS' COUNSEL AND LAW FIRM IN VIOLATION OF FED. R. CIV. P. 11(b) AND IMPOSING SANCTIONS UNDER FED. R. CIV. P. 11(c)**

Paul L. Maloney, United States District Judge

In July 2015, Plaintiff filed a one-count complaint alleging a violation under the

Fair Labor Standards Act, seeking damages for alleged unpaid wages. (ECF No. 1.) What seemed like a run-standard FLSA complaint then blossomed into a much more complicated case.

In August 2015, Defendants filed an answer and four separate state-law counterclaims. (ECF Nos. 9–10.) The Court subsequently found that one of those claims, an "abuse of process" claim under Michigan state law, was frivolous. (*See* ECF No. 19 at PageID.182–89.) Thus, on its own initiative pursuant to Rule 11(c)(3), the Court ordered Defendants' counsel (and law firm) to show cause why pleading "an abuse of process" counterclaim did not violate Rule 11(b), and sanctions should not issue consistent with Rule11(c)(3)–(5). (*See id.* at PageID.189.)

Defendants filed a timely response (ECF No. 19), but the Court finds the response unpersuasive and sanctions appropriate. The Court will resolve this issue without a hearing.[1]

## I. Legal Framework

"On its own, the party may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). In its original order to show cause, the Court stated the following:

First, as the Court has alluded to, an "abuse of process" claim under state common law could not possibly be a

cause of action for the mere filing of a complaint in *federal* court. A variety of bodies of law, including the Rules Enabling Act, various preemption doctrines, and the *Erie* Doctrine would bar that sort of claim here.[2] While it's possible that a proper "abuse of process" claim *might* lie in rare diversity cases concerning alleged abusive behavior in state proceedings, *this* case arises under federal question jurisdiction. Plaintiff originally filed a one-count complaint in *federal* court, alleging a violation of *federal* law, in which *federal* rules provide the ground rules for alleged abuses in *federal* proceedings.

An "abuse of process" claim, apparently rooted in Michigan common law from the early-twentieth century, cannot be employed to collaterally attack alleged "abuses" contained in the body of a federal complaint. Again, there are a plethora of potential bars to this claim in federal court, including but not limited to the fact that the Federal Rules of Civil Procedure expressly govern sanctions for "commit[ing]" an act in the process [of initiating or maintaining a civil action] that is improper in the regular prosecution of the claim." (ECF No. 9 at PageID.28); *see, e.g.,* Fed. R. Civ. P. 11(b)–(c); *see also, e.g., First Marietta Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501 (6th Cir. 2002) ("Ohio Revised Statute § 2323.51

---

1. Counsel "requested that the Court set this matter for hearing, pursuant to Local Rule 83.1(k)(i)." (ECF No. 20 at PageID.213.) That section of the Local Rules only applies to "discipline" under the Local Rules, and not sanctions under Fed. R. Civ. P. 11. In any event, the decision to hold a hearing is in the sound discretion of the Court. *See* W.D. Mich. LCivR 83.1(k)(i) ("Upon the attorney's response to show cause, and after hearing, if requested *and allowed* by the district judge, ... the Court shall enter an appropriate order."); *see also* Fed. R. Civ. P. 11(c)(5) ("The

court must not impose a monetary sanction ... on its own, unless it issued the show-cause order under Rule 11(c)(3)")

2. The Court recognizes that certain doctrines do not apply to bar Michigan's "abuse of process claim," such as the *Noerr–Pennington* doctrine, "which is focused on the instigation of unreasonable proceedings," rather than "abuse of proceedings[ ] which occurs after the process has been initiated." *See DirectTV v. Zink,* 286 F.Supp.2d 873, 876 (E.D.Mich. 2003).

is procedural in nature," and thus, Rule 11, rather than Ohio law, governed "sanctions for frivolous conduct."). The fact that Defendants baldly seek "attorney's fees" as their sole relief under this count underscores the impropriety of such a claim in federal court. *See, e.g., First Marietta Bank of Marietta,* 307 F.3d at 530 ("Under Ohio law, the court can award costs and fees.... Because the Ohio statute does not have a safe harbor provision similar to Rule 11, the Ohio statute conflicts with the procedural requirements of the federal rule.").

Here, the only facts that Defendants allege in their counterclaim for any "abuse of process" is alleged "false and untenable allegations" contained in Count I of the *federal* complaint, which merely seeks unpaid wages under the FLSA. Notwithstanding the obvious reasons why a state common law "abuse of process" claim for alleged "false and untenable allegations" contained in a *federal* complaint, concerning a *federal* cause of action, could not possibly lie, Defendants have failed to state a claim upon which could be granted under state law.

"In Michigan, to establish a claim for abuse of process, a plaintiff must prove: '(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding.' *Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585, 594 (1981) (citation omitted). For an abuse-of-process claim, the misconduct 'is not the wrongful procurement of legal process *or the wrongful initiation of criminal or civil proceedings* ; it is the misuse of process, no matter how properly obtained, for

any purpose other than that which it was designed to accomplish.' *Id.* at n. 18 (quoting Restatement (Second) of Torts § 682 cmt. a (1977)). Garcia's abuse-of-process claim against Thorne fails because Thorne's behavior has to do with the initiation of criminal proceedings, not the misuse of process. *Spear v. Pendill,* 164 Mich. 620; 130 N.W. 343, 344 (1911) (stating that the abuse-of-process cause of action 'lies for the improper use of process after it has been issued, not for maliciously causing it to issue')." *Garcia v. Thorne,* 520 Fed.Appx. 304, 311 (6th Cir.2013) (emphasis added); *see, e.g., DirecTV v. Zink,* 286 F.Supp.2d 873, 876 (E.D.Mich. 2003) ("Defendant alleges only that plaintiff initiated the case in order to extort money from defendant. As *Friedman* makes clear, an abuse of process action is only appropriate 'for the improper use of process after it has been issued, not for maliciously causing it to issue.' ").

Thus, even if the cause of action concerned alleged abuses in state proceedings, Michigan common law does not recognize such an action for the mere "initiat[ion of a] case in order to extort money." *E.g., DirecTV,* 286 F.Supp.2d at 876.

In sum, the Court is deeply concerned that Defendants' claim could not possibly have been "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ.P. 11(b) [3]; *see, e.g., Powell v. Squire, Sanders & Dempsey,* 182 F.3d 918 (6th Cir.1999) (table) (upholding in

---

**3.** The Federal Rules provide that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... [that] (2) the claims ... and other legal contentions are warranted by existing law." Fed. R. Civ. P. 11(b).

part imposition of sanctions because "abuse of process claim" "utterly lacked any basis in law").

Any "inquiry reasonable under the circumstances" would surely have led counsel to the conclusion that the Court (and Plaintiff) drew. When an attorney files a complaint, she certifies that "the claims ... and other legal contentions are warranted by existing law ... [and] the factual contentions have evidentiary support, or if specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b); *see, e.g., Bus. Guides, Inc., v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 533, 554, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) ("Rule 11 imposes an *objective standard of reasonable inquiry.*" (emphasis added)); *Chambers v. NASCO*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27, (1991) ("Rule 11 ... imposes an objective standard of reasonableness inquiry which does not mandate a finding of bad faith."); *see also, e.g., First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 515 (6th Cir.2002) ("[T]he imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct.'"); *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986) ("[S]anctions shall be imposed when it appears that a competent attorney could not form the reasonable belief as to the validity of what is asserted in the paper.").

Thus, the Court **DISMISSES** Defendants' fourth counterclaim **WITH PREJUDICE** pursuant to Fed. R. Civ. P. 12(b)(6). Further, pursuant to Fed. R. Civ. P. 11(c)(3), the Court **ORDERS** Defendants' counsel and law firm[4] to **SHOW CAUSE** why pleading this counterclaim "has not violated Rule 11(b)," as it was "not warranted by existing law."

(*See* ECF No. 19 at PageID.182–85.)

Thus, consistent with well-established requirements for due process, the Court "issue[d] a show-cause order requiring the alleged violator to show cause why conduct specifically described in the order has not violated Rule 11(b).'" *Indah v. U.S. S.E.C.*, 661 F.3d 914, 926 (6th Cir.2011) (citing Fed. R. Civ. P. 11(c)(3)). The Court has given proper "notice and a reasonable opportunity to respond." *Id.*; Fed. R. Civ. P. 11(c)(1).

The Court must now consider arguments advanced by counsel, with the principle in mind that "Rule 11 imposes an objective standard of reasonable inquiry." *Bus. Guides, Inc., v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 533, 554, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *see, e.g., Chambers v. NASCO*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27, (1991) ("Rule 11 ... imposes an objective standard of reasonableness inquiry which does not mandate a finding of bad faith."); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 515 (6th Cir. 2002) ("[T]he imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct.'"). "An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." Fed. R. Civ. P. 11(c)(6). Counsel argues that sanctions should not issue for a few reasons, which the Court will address in turn.

---

4. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a *law firm* must be held *jointly responsible* for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1) (emphasis added)

## II. Analysis

### A. "The Limited Time Counsel Had to Decide Whether or not to Preserve the Abuse of Process Claim Justified Relying on the Facts he had at the Time."

Counsel first argues that he faced a limited time period for filing an answer or compulsory counterclaim.

> It should not escape the court, in evaluating whether counsel committed sanctionable misconduct in bringing the abuse of process claim when he did on the facts that he did, that if the court *had* agreed that *Hines, Roush, Bloch,* and *Cheney* (discussed to follow) applied to this case, counsel's failure to bring the claim as a counterclaim could have prejudiced his clients by costing them their right to recovery under a potentially viable claim. In evaluating whether the facts counsel had at the time warranted the claim, the court should consider that counsel had 21 days to make this decision or risk losing the claim forever.

(ECF No. 20 at PageID.199.)

■ However, counsel neglects to recognize that the very duty imposed by Rule 11 remains the same whether an attorney has one day or twenty-one days to advance a claim. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances* . . . [all] claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."). As the Court noted in its original opinion and order, any "inquiry reasonable under the circumstances," *particularly* an inquiry that allowed for twenty-one days, would surely have led Counsel to the conclusion that the Court (and Plaintiff) drew. (*See* ECF No. 19 at PageID.185.) Counsel should not have worried about the "risk of losing the claim forever" until a "reasonable inquiry" suggested that the claim could lie in the first place. Even more concerning to the Court, however, is counsel's *continued* insistence that "the abuse of process claim was based on a plausible view of the law." (*See* ECF No. 20 at PageID.200.)

### B. "The Undersigned Believed that the Abuse of Process Claim was Based on a Plausible View of the Law."

#### i. Invalidity of Claim under Michigan Law

■ Counsel states that he "believes that reasonable minds, *considering the caselaw he had at the time,* could have concluded" that he advanced "a legal position on a nonfrivolous *extension of existing law.*" (ECF No. 20 at PageID.200 (emphasis added).) This response highlights two implicit problems with counsel's judgment.

First, counsel implicitly recognizes that *published* case law directly refutes his argument that an "abuse of process" claim could lie for the mere initiation of a lawsuit. Counsel apparently wants the Court to believe that he was able to locate three (easily distinguishable) unpublished Michigan Court of Appeals cases which supported an "extension of existing law" (the "caselaw he had at the time")[5], but that he

---

5. Counsel's continued reliance on these unpublished decisions, all readily distinguishable, is disingenuous; and of course none of those unpublished state cases in an intermediate court addresses the second major problem with the counterclaim: the mere filing of a *federal* complaint under *federal* question jurisdiction cannot be the basis for a *state-law* "abuse of process" · claim in *federal* court.

failed to discover, consider, or cite to the numerous *published* decisions by the Michigan Supreme Court, federal district courts applying Michigan law, and the Sixth Circuit Court of Appeals which all provide *clear* guidance that an "abuse of process" claim was not at all plausible in this case.

In its original opinion and order, the Court cited to a plethora of (published) binding and persuasive authority that directly refutes counsel's "plausibility" argument:

> "In Michigan, to establish a claim for abuse of process, a plaintiff must prove: '(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding.' *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585, 594 (1981) (citation omitted). For an abuse-of-process claim, the misconduct 'is not the wrongful procurement of legal process *or the wrongful initiation of criminal or civil proceedings*; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish.' *Id.* at n. 18 (quoting Restatement (Second) of Torts § 682 cmt. a (1977)). Garcia's abuse-of-process claim against Thorne fails because Thorne's behavior has to do with the initiation of criminal proceedings, not the misuse of process. *Spear v. Pendill*, 164 Mich. 620, 130 N.W. 343, 344 (1911) (stating that the abuse-of-process cause of action 'lies for the improper use of process after it has been issued, not for maliciously causing it to issue')." *Garcia v. Thorne*, 520 Fed.Appx. 304, 311 (6th Cir.2013) (emphasis added); *see, e.g., DirecTV v. Zink*, 286 F.Supp.2d 873, 876 (E.D.Mich. 2003) ("Defendant alleges only that

plaintiff initiated the case in order to extort money from defendant. As Friedman makes clear, an abuse of process action is only appropriate 'for the improper use of process after it has been issued, not for maliciously causing it to issue.' ").

> Thus, even if the cause of action concerned alleged abuses in state proceedings, Michigan common law does not recognize such an action for the mere "initiat[ion of a] case in order to extort money." *E.g., DirecTV*, 286 F.Supp.2d at 876.

(ECF No. 19 at PageID.184.) Simply put, counsel's claim was not at all plausible given the great weight of easily accessible and published case law, as the Court found.[6]

Counsel yet again, however, "asks this court to now consider only whether the caselaw discussed herein[7] stated a plausible view of the law in this regard" by analyzing what counsel admits is "not binding precedent," despite admitting that the Court's "[o]pinion relied primarily on *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585 (1981) [and] *Spear v. Pendill*, 164 Mich. 620, 130 N.W. 343 (1911)," two published Michigan Supreme Court decisions. (ECF No. 20 at PageID.201, 203.)

The Court will briefly indulge counsel's renewed request.

Counsel first argues that "the Michigan Court of Appeals ... allow[ed] a claim of abuse of process to proceed based upon the *initiation* of a legal action when it was claimed that the claim was based on fabricated allegations." (*Id.* at PageID.202 (citing *Estate of Roush ex rel. Hardy v. Laurels of Carson City, LLC*, 2014 WL

---

6. While other federal court decisions are not technically binding, all of the federal case law points to the same published, binding Michigan Supreme Court decisions.

7. *See infra* and accompanying text.

7004021 (Mich.Ct.App. Dec. 11, 2014) (unpublished)).) That is at best, an incomplete assessment of the case.

In *Roush*, a plaintiff filed suit alleging that "defendant unlawfully detained Roush at [a care] facility while *a determination was pending with regard to Roush's ability to make treatment decisions* for herself and that defendant's agents committed various torts while Roush was at the facility and *after Roush was discharged from the facility*." *Estate of Roush ex rel. Hardy*, 2014 WL 7004021, at *1. "[P]laintiff's claims of abuse of process ar[o]se out of the allegations that one of defendant's employees improperly helped ... file a *petition for guardianship ... after* [plaintiff] was discharged from the facility, and that these actions were done for the improper purposes of harassing Roush, retaliation against Roush, and financial gain if Roush remained in the facility." *Id.* Thus, the guardianship petition, an alleged abuse of process, arose in the context of already-existing "proceedings," where the defendant had first become "a patient advocate" under Michigan Court Rules. *Id.* It appears there was a viable "abuse of process" claim under the Michigan Supreme Court's *existing* framework, which is why that same court *cited to Friedman*, 312 N.W.2d at 585. Indeed, *Friedman* provided the following guidance, as this Court cited to in its original opinion and order: "[A] summons and complaint are properly employed when used to institute a civil action, and thus plaintiff has failed to satisfy the second element required in *Spear, supra*, 623, 130 N.W. 343, where the Court observed '[t]his action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue.'" *Friedman*, 312 N.W.2d at 595.

Counsel next argues that "[t]wo other recent Michigan decisions suggest that fabricated allegations made during litigation subject the maker to a claim of abuse of process." (ECF No. 20 at PageID.204.) Counsel essentially admits that neither of those cases are even "as strong a precedent as *Roush*," which is actually not strong at all. (*See id.* at PageID.203.) In *Cheney*, the Court of Appeals simply rejected plaintiff's arguments considering *damages*, and noted the Court "need not consider it," because "he never raised [his damages argument] before the trial court." *Cheney v. Cheney*, 2014 WL 1720445, *6 (Mich.Ct.App. Apr. 29, 2014) (unpublished). The holding in the case has nothing to do with the legal position counsel is trying to "extend," and in any event, the "abuse of process," which was merged with a claim for "malicious prosecution," related to plaintiff's "damages incurred in defending against [an unfounded] criminal case and his hotel expenses after defendant's PPO barred him from entering the marital home." *Id.* Again, the facts of that case fall *within the framework* provided by the Michigan Supreme Court. Counsel's last unpublished Michigan case, *Bloch*, similarly provides zero support for counsel's legal position. Counsel sums the case up as follows: "In this case, a wife initiated divorce proceedings against her husband. She *then* made false statements to the court that he had abused the children *in order to gain full custody*." (ECF No. 20 at PageID.204.) Consistent with the Michigan Court's framework, that plaintiff "improper[ly] use[d] ... process *after* [the initiation of divorce proceedings]" in the context of a determination of child custody. *Friedman*, 312 N.W.2d at 595 (emphasis added).

Here, again, by contrast, counsel filed a counterclaim of "abuse of process" solely because Plaintiff filed a federal complaint alleging a violation of federal law. (*See* ECF No. 9 at PageID.28 ("Michigan law recognizes a claim for abuse of process when a party has initiated ... a civil or

criminal action for an ulterior purpose.") ("Counter–Plaintiffs may recover their actual losses resulting from [the] malicious complaint.") ("[Plaintiff's] [complaint] evince[s] an ulterior purpose to extort a quick settlement.").) Shockingly, counsel cited to *Spear*, 164 Mich. at 623, 130 N.W. 343 for the assertion that "Michigan law recognizes a claim for abuse of process when a party has initiated ... a civil or criminal action for an ulterior purpose" when that case actually states: "[an] action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Spear*, 164 Mich. at 623, 130 N.W. 343. Counsel's perversion of the holding in *Spear* is sanctionable in its own right. *See, e.g., Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986) ("[A] competent attorney could not form the reasonable belief as to the validity of what is asserted in the paper."). Since the filing of the counterclaim, and recognizing that he distorted *Spear*, counsel has run away from that very case.[8]

In sum, none of the unpublished cases support "a legal position on a nonfrivolous *extension of existing law*." (ECF No. 20 at PageID.200 (emphasis added).) Regardless, federal courts may not "exten[d] ... existing [state] law" through three easily distinguishable, unpublished intermediate court cases when *clear* guidance exists from the Michigan Supreme Court. *See, e.g., Friedman*, 312 N.W.2d at 595; *see also, e.g., Mid–Century Ins. Co.*, 749 F.Supp.2d at 667.[9]

In a second related concern, counsel implies that a federal court may "exten[d] ... existing [state] law." (*See* ECF No. 20 at PageID.200 ("Rule 11 allows counsel to maintain a legal position based on a nonfrivolous extension of existing law.").)

However, federal courts must apply binding precedent of the Michigan Supreme Court and ignore the very case law that counsel *continues* to advance in this case. *See, e.g., Mid–Century Ins. Co. v. Fish*, 749 F.Supp.2d 657, 667 (W.D.Mich. 2010) (citing *Royal Indem. Co. v. Clingan*, 364 F.2d 154, 158 (6th Cir.1966)) ("[T]his court may consider and follow unpublished state-court decisions, *so long as they do not contradict published decisions of the Michigan Supreme Court or Michigan Court of Appeals*." (emphasis added)). Indeed, even the Michigan Court of Appeals is not bound[10] by *any* of the (very few) unpublished decisions that at best, do not even directly support counsel's position that an "abuse of process" claim may lie for "maliciously causing [process] to issue." *Spear*, 130 N.W.at 344; *see, e.g., Garcia*, 520 Fed.Appx. at 311 ("For an abuse-of-process claim, the misconduct 'is not the wrongful procurement of legal process *or the wrongful initiation of criminal or civil proceedings* ; it is the misuse of process, no matter how properly attained for any purpose other than that which it was designed to accomplish." (emphasis added)). And nor could those cases "extend existing [state] law." *See supra* note 7.

### ii. Improperty of the Claim in Federal Court

■ Ample evidence exists to support sanctions for frivolously asserting an "abuse of process" claim, as the application of Michigan law would yield no plausible claim. However, the claim was "objective-

---

8. The response to the show-cause order is silent as to the very case he based his counterclaim on. (*Compare* ECF No. 9 at PageID.28 with ECF No. 20.)

9. Similarly, counsel's citation to an unpublished case from the District of Massachusetts

is not at all relevant to what Michigan law allows.

10. *See, e.g.,* Mich. Ct. R. 7.215(C)(2) ("A *published* decision of the Court of Appeals has precedential value under the rule of stare decisis.").

ly unreasonable" for yet *another* reason. Even assuming, for the sake of argument, that the Michigan Supreme Court recognized an "abuse of process" claim for the mere filing of a complaint, the complaint *in this case* was based solely on *federal* law and filed in *federal* court.

 Even in cases that invoke *diversity* jurisdiction, federal courts apply federal procedural law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that federal courts sitting in diversity must apply state substantive law, and federal procedural law). In federal question cases, federal courts obviously apply federal substantive law and federal procedural law. In its original opinion and order, the Court noted:

> [A]s the Court has alluded to, an "abuse of process" claim under state common law could not possibly be a cause of action for the mere filing of a complaint in *federal* court. A variety of bodies of law, including the Rules Enabling Act, various preemption doctrines, and the *Erie* Doctrine would bar that sort of claim here.[11] While it's possible that a proper "abuse of process" claim *might* lie in rare diversity cases concerning alleged abusive behavior in state pro-

ceedings, *this* case arises under federal question jurisdiction. Plaintiff originally filed a one-count complaint in *federal* court, alleging a violation of *federal* law, in which *federal* rules provide the ground rules for alleged abuses in *federal* proceedings.

(ECF No. 19 at PageID.182.) In other words, even *if* Michigan law provided that an "abuse of process" claim·could lie for the mere filing of a complaint (it does not), the Court would refuse to allow such a claim in the context of *this* case against *this* complaint, which solely includes federal claims arising out of federal question jurisdiction.

 An "abuse of process" claim, apparently rooted in Michigan common law from the early-twentieth century, cannot be employed to collaterally attack alleged "abuses" contained in the body of a federal complaint.[12] Again, there are a plethora of potential bars to this claim in federal court, including but not limited to the fact that the Federal Rules of Civil Procedure expressly govern sanctions for "commit[ing] an act in the process [of initiating or maintaining a civil action] that is improper in the regular prosecution of the claim." (ECF No. 9 at PageID.28); *see, e.g.,* Fed. R. Civ. P. 11(b)–(c); *see also,*

---

**11.** The Court recognizes that certain doctrines do not apply to bar Michigan's "abuse of process claim," such as the *Noerr–Pennington* doctrine, "which is focused on the instigation of unreasonable proceedings," rather than "abuse of proceedings[] which occurs after the process has been initiated." *See DirectTV v. Zink*, 286 F.Supp.2d 873, 876 (E.D.Mich.2003).

**12.** A state-law "abuse of process" claim is plausible in limited cases under diversity jurisdiction. *See, e.g., Matthews v. Storgion*, 174 Fed.Appx. 980, 986 (6th Cir.2006). However, in its most recent case, the Sixth Circuit stated that it does not even recognize "a federal abuse of process claim" in the context of § 1983. *Rapp v. Dutcher*, 557 Fed.Appx. 444,

448 (6th Cir.2014). By contrast, federal courts can adjudicate "malicious prosecution" claims arising from prosecution in state courts, as state law and 42 U.S.C. § 1983 recognize such a cause of action. *See, e.g., Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir.2010). However, regardless, the mere *filing* of a *federal* civil complaint under *federal* question jurisdiction surely does not by itself give rise to a state-law cause of action for "abuse of process." That is because *even in diversity cases,* "Rule 11, rather than [Michigan] law," governs "sanctions for frivolous conduct" *in federal court, see First Bank of Marietta*, 307 F.3d at 529, and "federal procedures themselves provide[] a remedy for ... malfeasance." *See Abbott Lab. v. Brennan*, 952 F.2d 1346, 1356–57 (Fed.Cir.1991).

*e.g., First Bank of Marietta,* 307 F.3d at 529 ("Ohio Revised Statute § 2323.51 is procedural in nature," and thus, Rule 11, rather than Ohio law, governed "sanctions for frivolous conduct."). The fact that Defendants baldly seek "attorney's fees" as their relief under this claim underscores the impropriety of such a claim in federal court. *See, e.g., First Bank of Marietta,* 307 F.3d at 530 ("Under Ohio law, the court can award costs and fees.... Because the Ohio statute does not have a safe harbor provision similar to Rule 11, the Ohio statute conflicts with the procedural requirements of the federal rule.").

The Federal Circuit similarly held that "the [Michigan] state tort action for abuse of process can[not] be invoked as a remedy for inequitable or other unsavory conduct of parties to proceedings in the Patent and Trademark Office," as "[t]he [federal agency] procedures themselves provided a remedy for ... malfeasance," and "[a]n additional state action would be an inappropriate collateral intrusion on the [federal] procedures ... 'under the guise of a complaint sounding in tort,' in the words of *Gilbert v. Ben–Asher,* 900 F.2d 1407, 1411 (9th Cir.1990), and is contrary to Congress' preemptive regulation in the area of patent law." *Abbott Lab. v. Brennan,* 952 F.2d 1346, 1356–57 (Fed.Cir.1991).[13]

Here, the only argument advanced for any "abuse of process" is essentially that Plaintiff's *act of filing* a *federal* complaint was designed to extort money from Defendants, and that allegation is evidenced by "false and untenable allegations" contained in the body of the *federal* complaint, which merely seeks unpaid wages under the FLSA. (*See* ECF No. 9 at PageID.28.)

Notwithstanding the obvious reasons why a state common law "abuse of pro-cess" claim for alleged "false and untenable allegations" contained in a *federal* complaint, concerning a *federal* cause of action, could not possibly lie, the claim was frivolous even under state-law principles, as the Court has discussed. *See supra* Part II. B.i.

### C. Sanctions are Appropriate

When an attorney files a complaint, she certifies that "the claims ... and other legal contentions are warranted by existing law ... [and] the factual contentions have evidentiary support, or if specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b); *see, e.g., Bus. Guides, Inc., v. Chromatic Commc'ns Enter., Inc.,* 498 U.S. 533, 554, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) ("Rule 11 imposes an *objective standard of reasonable inquiry.*" (emphasis added)); *Chambers v. NASCO,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27, (1991) ("Rule 11 ... imposes an objective standard of reasonableness inquiry which does not mandate a finding of bad faith."); *see also, e.g., First Bank of Marietta,* 307 F.3d at 515 ("[T]he imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct.' "); *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986) ("[S]anctions shall be imposed when it appears that a competent attorney could not form the reasonable belief as to the validity of what is asserted in the paper.").

Any "inquiry reasonable under the circumstances" would surely have led counsel to the conclusion that the Court (and Plaintiff) drew. Filing a state-law counterclaim for "abuse of process" was clearly not "warranted by existing [Michigan] law

---

**13.** If an "abuse of process" claim cannot arise from alleged "unsavory conduct of parties to proceedings" before a federal agency, surely such a claim cannot arise from alleged "unsavory conduct of parties to proceedings" before a federal court.

or by a nonfrivolous argument for extending ... existing law." *See* Fed. R. Civ. P. 11(b)(2). The reasons for this conclusion are manifold, as the Court has discussed in detail. Michigan law clearly does not allow a claim for "abuse of process" in this context because "a summons and complaint are properly employed when used to institute a civil action, and thus plaintiff has failed to satisfy the second element required in *Spear, supra,* 623, 130 N.W. 343, where the Court observed '[t]his action for abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue.'" *Friedman,* 312 N.W.2d at 595. And even assuming for the sake of argument that Michigan did recognize such a claim, the mere *filing* of a *federal* complaint solely containing a *federal* cause of action cannot be the basis for relief in *federal* court because the *Federal* Rules of Civil Procedure expressly govern sanctions for "commit[ing] an act in the process [of initiating or maintaining a civil action] that is improper in the regular prosecution of the claim." (ECF No. 9 at PageID.28); *see, e.g.,* Fed. R. Civ. P. 11(b)–(c); *see also, e.g., First Bank of Marietta,* 307 F.3d at 529 ("Ohio Revised Statute § 2323.51 is procedural in nature," and thus, Rule 11, rather than Ohio law, governed "sanctions for frivolous conduct.").

Simply put, counsel's filing of an "abuse of process" claim was "objectively unreasonable" by any measure. *See, e.g., First Bank of Marietta,* 307 F.3d at 515 ("[T]he imposition of Rule 11 sanctions requires a

showing of 'objectively unreasonable conduct.' ").

Thus, consistent with its authority under Fed. R. Civ. P. 11(c)(3), the Court finds that Defendants' counsel has violated Fed. R. Civ. P. 11(b), and sanctions are appropriate.

"A sanction imposed under this rule must be *limited* to what *suffices to deter* repetition of the conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4) (emphasis added). When a court acts sua sponte, "[t]he sanction may include non-monetary directives[ ][or] an order to pay a penalty into court." *Id.*[14]; *cf. Danvers v. Danvers,* 959 F.2d 601, 605 (6th Cir. 1992) ("The idea is not to bankrupt an attorney ... but to deter him from repeating the conduct prohibited by Rule 11.").

■ Here, the Court finds a modest monetary penalty appropriate. In a recent case involving a frivolous appeal, for example, the Sixth Circuit awarded sanctions "in the amount of $1500 from each appellant." *See McDonald v. Flake,* 814 F.3d 804, 818 (6th Cir.2016). The Sixth Circuit has upheld larger awards, particularly in cases where attorney fees were awarded to a party who filed a motion under Rule 11(c)(2). *See, e.g., Huntsman v. Perry Local Schools Bds. of Educ.,* 379 Fed.Appx. 456, 459–60 (6th Cir.2010) (upholding sanctions in the amount of $3,135.00 for filing claims barred by statute of limitations and res judicata).[15]

14. Reasonable attorney's fees to the other side can only be awarded if sanctions are "imposed by motion." *See id.*

15. The Sixth Circuit has even held that a district court abused its discretion for imposing sanctions *too low* to deter similar conduct. *See Rentz v. Dynasty Apparel Indus., Inc.,* 556 F.3d 389, 401 (6th Cir.2009) (holding that "sanction awards of $2,500 and $250"

against attorneys were not sufficient " 'to deter repetition of the conduct or comparable conduct by others similarly situated' " when the wrongful conduct had resulted in "$29,-294.87 in attorney fees reasonable incurred by ... the ... Defendants."). That case also implied that an attorney's ability to pay is not relevant, as "all attorneys ... [are] subject to sanctions sufficient to meet the deterrent goals of Rule 11." *Id.*

In a case with similar facts, where a district court concluded that an attorney's "conduct asserting claims of malicious prosecution and abuse of process was not reasonable under the circumstances," the Sixth Circuit sustained part of a sanctions award in the amount of $1,000. *See Powell v. Squire, Sanders & Dempsey,* 182 F.3d 918 (table) (6th Cir.1999) (vacating the district court's order only with respect to an unrelated contingent award).

However, the Court finds sanctions in a lesser amount—of $250 payable into court—appropriate here, and "suffic[ient] to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see, e.g., Savage v. Unknown FBI Agents,* 142 F.3d 436 (6th Cir.1998) (table) (affirming sanctions in the amount of $250 per party appropriate); *cf. Reid v. City of Flint,* 221 F.3d 1335 (6th Cir.2000) (table) (affirming dismissal of frivolous claim, where district court had also sanctioned party for $250).[16]

The rules state that "[a]bsent exceptional circumstances, a law firm must be held *jointly responsible for a violation* committed by its partner, associate, or employee." *Id.* R. 11(c)(1) (emphasis added).[17] Because no such "exceptional circumstances" exist, Attorney Collin H. Nyeholt and Fixel & Nyeholt, PLLC, a/k/a Fixel Law Offices, are "jointly responsible" to pay $250 into court no later than April 15, 2016. *See id.* Payment should be made to the Clerk of Court of the Western District of Michigan. *Id.* R. 11(c)(4); *see, e.g., River-*

*head Sav. Bank v. Nat'l Mortg. Equity Corp.,* 893 F.2d 1109, 1112 (9th Cir.1990) ("Sanctions under Rule 11 can be made payable ... to the clerk of the court.").

**IT IS SO ORDERED.**

---

**16.** The Court ultimately believes that the very fact that counsel was admonished through a detailed written opinion for asserting a frivolous claim under Rule 11(c)(3), in context with requiring an affirmative act of a small monetary sanction, will together "suffice" to deter counsel, his law firm, and other members of this bar from asserting a claim without first conducting an honest and "reasonable inquiry." *Cf. Bus. Guides, Inc.,* 498 U.S. at 554, 111 S.Ct. 922.

**17.** "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a *law firm* must be held *jointly responsible* for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1) (emphasis added)