Core Techs, Inc. v. Advanced Fraud Sols., LLC, 2018 NCBC 46.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>GUILFORD COUNTY | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>18 CVS 2523 |
| CORE TECHS, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>ADVANCED FRAUD SOLUTIONS, LLC; ALLEGACY SERVICES, LLC; and PROFESSIONAL LEAGUE RESOURCES, INC. f/k/a CREDIT UNION SERVICES CORPORATION,<br><br>        Defendants. | **ORDER AND OPINION ON DEFENDANTS' MOTION TO DISMISS** |

1.    **THIS MATTER** is before the Court on Defendants' Motion to Dismiss (the "Motion"). Having considered the Motion, the briefs, and the arguments of counsel at a hearing on the Motion[1], the Court **DENIES** the Motion.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jennifer K. Van Zant, Clint S. Morse, and Jessica Thaller-Moran, for Plaintiff.*
>
> *Spilman Thomas & Battle, PLLC, by Jeffrey D. Patton, Kevin B. Cartledge, Ashlee A. Webster, and Carrie M. Harris, for Defendants.*

Robinson, Judge.

## I.    PROCEDURAL HISTORY

2.    The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

---

[1] At the hearing, the Court also heard arguments of counsel on Plaintiff's motion for summary judgment. The Court will issue a separate order and opinion on Plaintiff's motion.

3. On November 30, 2017, Advanced Fraud Solutions, LLC ("AFS"), a Defendant in this action, filed a Verified Complaint against Core Techs, Inc. ("Core Techs"), Plaintiff in this action, in the Middle District of North Carolina, Case No. 1:17-cv-01080 (the "Federal Action"). (Defs.' Br. Supp. Renewed Mot. Dismiss Ex. D ["Fed. Compl."], ECF No. 24.4.)

4. On January 8, 2018, Core Techs initiated this action against AFS, Allegacy Services, LLC ("Allegacy"), and Professional League Resources, Inc. ("PLR") (collectively, the "Defendants") by filing its Complaint. (ECF No. 3.) Core Techs filed its First Amended Complaint on February 2, 2018. (ECF No. 13.)

5. This action was designated as a mandatory complex business case by order of Chief Justice Mark Martin of the Supreme Court of North Carolina dated January 10, 2018, (ECF No. 1), and assigned to the undersigned by order of Chief Business Court Judge James L. Gale that same day, (ECF No. 2).

6. On March 2, 2018, Defendants filed the Motion seeking dismissal of Core Techs's First Amended Complaint pursuant to Rules 12(b)(6) and 13(a) of the North Carolina Rules of Civil Procedure and the prior pending action doctrine, contending that Core Techs's claims are compulsory counterclaims in the Federal Action and the Federal Action abates this subsequently filed action by Core Techs. (ECF No. 23.)

7. Following full briefing on the Motion, the Court held a hearing on April 23, 2018. After the hearing, at the invitation of the Court, the parties filed supplemental briefs on the issue of whether Core Techs's claims are compulsory counterclaims

under Rule 13(a) of the Federal Rules of Civil Procedure ("Federal Rule(s)"). (ECF Nos. 38–39.)

8. The Motion is now ripe for resolution.

## II. THE PARTIES

9. Core Techs is a North Carolina corporation with its principal place of business in Forsyth County, North Carolina. (First Am. Compl. ¶ 2.)

10. Allegacy is a North Carolina limited liability company with its principal place of business in Forsyth County, North Carolina. (First Am. Compl. ¶ 4.)

11. PLR is a North Carolina corporation with its principal place of business in Wake County, North Carolina. (First Am. Compl. ¶ 5.)

12. AFS is a North Carolina limited liability company with its principal place of business in Guilford County, North Carolina. (First Am. Compl. ¶ 3.) In 2007, Core Techs, Allegacy, and PLR formed AFS for the purpose of marketing TrueChecks® and TrueCards® fraud software programs to other credit unions. (First Am. Compl. ¶¶ 6–7.) Core Techs owns a twenty percent interest in AFS, and Allegacy and PLR each own a forty percent interest in AFS. (First Am. Compl. Ex. 1, at 16, ECF No. 13.1.)

## III. THE STATE ACTION

13. In this action, Core Techs alleges that Core Techs, Allegacy, and PLR executed an Operating Agreement on July 25, 2007 (the "2007 Operating Agreement"). (First Am. Compl. Ex. 1, at 15.) In the event a member wanted to transfer its interest in AFS, section 11.4 of the 2007 Operating Agreement provided

AFS with "a right of first offer" to purchase the member's interest for a price equal to the member's capital account as adjusted for debits and credits then due. (First Am. Compl. Ex. 1, § 11.4.) Further, section 12.2 of the 2007 Operating Agreement provided that if a member dissociated from AFS, the dissociating member was entitled to an amount equal to the value of the member's capital account. (First Am. Compl. Ex. 1, § 12.2b.)

14. Core Techs contends, and Defendants dispute, that sections 11.4 and 12.2 of the 2007 Operating Agreement were amended in 2012. (First Am. Compl. ¶¶ 26–27, Ex. 3, ECF No. 13.3.) According to Core Techs, section 11.4 was amended such that AFS had a right of first offer to purchase the member's interest for a price equal to the confirmed offer by the proposed buyer, rather than to the amount of the member's capital account. (First Am. Compl. Ex. 3, § 11.4.) Core Techs further claims that, pursuant to amended section 12.2, a dissociating member was entitled to an amount equal to the fair market value of the member's interest in AFS, rather than to the amount of the member's capital account. (First Am. Compl. Ex. 3, § 12.2b.)

15. By May 2017, the relationship between Core Techs, Allegacy, and PLR had been irreparably strained. (First Am. Compl. ¶ 58.) From June 2017 through August 2017, discussions ensued between AFS and Core Techs regarding the purchase of Core Techs's interest in AFS; however, the parties were unable to reach an agreement. (*See* First Am. Compl. ¶¶ 59–65.)

16. Core Techs alleges that in November 2017, Allegacy and PLR further amended the Operating Agreement to strip Core Techs of the value of its interest in

AFS. (First Am. Compl. ¶ 94.) Under the 2017 amendments, AFS's right of first offer and the rights of a dissociating member are substantially the same as they were under the 2007 Operating Agreement. (*See* First Am. Compl. ¶ 80d, g.) Further, under amended section 12.2g, the dissociation of a member is deemed to occur upon

> a determination, by Super Majority consent of the Members, that a Member should be removed in the event there is a final judgment of a court of competent jurisdiction that the relevant Member is found to have breached this Agreement . . . or to have acted fraudulently, in bad faith or with gross negligence, and such loss, claim, damage, liability or action has resulted therefrom.

(First Am. Compl. Ex. 10, § 12.2g, ECF No. 13.10.)

17. In this action, Core Techs contends that Allegacy and PLR have attempted to exercise their power as majority members of AFS to bully Core Techs into a bargain sale of its interest in AFS. (First Am. Compl. ¶ 66.) Core Techs asserts claims against AFS, Allegacy, and PLR for (1) breach of AFS's Operating Agreement, (2) breach of the duty of loyalty, (3) judicial dissolution of AFS, and, (4) alternative to its first three claims, a claim for a declaratory judgment that the 2017 amendments to AFS's Operating Agreement are null and void and that the Operating Agreement as allegedly amended in 2012 is enforceable, and, (5) alternative to its first four claims, a claim for a declaratory judgment that the right of first offer provisions in the 2007 and 2017 Operating Agreements, and section 12.2g of the 2017 Operating Agreement, are void as an unenforceable penalty against public policy. (First Am. Compl. 20–26.)

## IV. THE FEDERAL ACTION

18. In the Federal Action, AFS alleges that it hired Core Techs to develop and support TrueChecks® and TrueCards® and, on January 1, 2015, AFS and Core Techs

entered into a Master Services Agreement ("MSA"). (Fed. Compl. ¶ 10.) Pursuant to the terms of the MSA, AFS sought Core Techs's assistance to develop new software ("Branch Capture") that would help integrate the TrueChecks® and TrueCards® software programs into other aspects of clients' computer systems. (Fed. Compl. ¶ 39.) AFS paid in excess of $1.3 million to Core Techs for the development of Branch Capture. (Fed. Compl. ¶ 40.) AFS contends that, over the course of thirty months, Core Techs repeatedly assured AFS that Branch Capture was viable and close to completion. (Fed. Compl. ¶ 41.) Core Techs subsequently informed AFS that Branch Capture was a failed venture and should be abandoned. (Fed. Compl. ¶ 41.) As a result, AFS suffered a complete loss. (Fed. Compl. ¶ 42.) AFS alleges, however, that Core Techs intentionally misrepresented to AFS that Branch Capture was a failed venture and instead successfully developed it for Core Techs's own benefit. (Fed. Compl. ¶ 43.)

19. AFS contends that, on or about September 1, 2017, Core Techs cancelled the MSA and advised AFS that it would no longer do any work for AFS. (Fed. Compl. ¶ 49.) AFS alleges that Core Techs failed to deliver the product and source code to AFS as required under the MSA. (Fed. Compl. ¶ 67.) AFS further alleges that Core Techs refused to provide any assistance to AFS in accessing the product and source code housed on Core Techs's servers, and AFS discovered that Core Techs's servers had been compromised because Core Techs did not properly secure open ports and failed to use secure passwords. (Fed. Compl. ¶¶ 51, 55, 58.) AFS contends that Core Techs is still in possession of AFS's confidential and proprietary information, and

that AFS has not received a complete and operational version of its product and source code. (Fed. Compl. ¶¶ 65–66.)

20. Additionally, AFS alleges that it is the owner of the federally registered trademarks for TrueChecks® and TrueCards® (the "Trademarks"), and that Core Techs used the Trademarks without authorization to promote itself. (Fed. Compl. ¶¶ 20, 22, 27.) AFS alleges that, in the spring of 2017, Core Techs deceitfully obtained a list of AFS's contracts by client and began contacting AFS's customers to solicit business in competition with AFS, falsely representing that Core Techs was a sister company of AFS and Core Techs's role with TrueChecks® and TrueCards®. (Fed. Compl. ¶¶ 29–30.)

21. AFS asserts claims in the Federal Action against Core Techs for (1) trademark infringement pursuant to section 32 of the Lanham Act, (2) unfair competition and false designation of origin pursuant to section 43(a) of the Lanham Act, (3) unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1, (4) breach of the MSA and the implied covenant of good faith and fair dealing, (5) gross negligence, (6) fraud, and (7) tortious interference with business relations and expectancies. (Fed. Compl. 13–16, 18–19, 21.) Additionally, AFS seeks punitive damages and preliminary and permanent injunctive relief. (Fed. Compl. 22.)

## V. ANALYSIS

### A. Compulsory Counterclaim

22. Because Defendants argue that Core Techs's claims are compulsory counterclaims in an earlier-filed action pending in federal court—rather than a North

Carolina state court—Federal Rule 13(a) governs whether Core Techs's claims are compulsory counterclaims in the Federal Action. *See, e.g.*, *Cruz v. Don Pancho Mkt., LLC*, 171 F. Supp. 3d 657, 666 (D. Mich. 2016) ("In federal question cases, federal courts obviously apply federal substantive law and federal procedural law."). *Cf. Soni v. Boston Med. Ctr. Corp.*, 683 F. Supp. 2d 74, 92 n.6 (D. Mass. 2009) ("Where the earlier action is a state court action, that state's law determines whether the new claim should have been brought as a compulsory counterclaim.").

23. Federal Rule 13(a) states that

> [a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1). The Court properly considers the record in the earlier-filed Federal Action to determine whether a later-filed claim in state court (i.e., this action) must be pursued as a compulsory counterclaim in the Federal Action. *See, e.g.*, *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 750−52 (7th Cir. 2015); *Ferrari v. E-Rate Consulting Servs.*, 655 F. Supp. 2d 1194, 1196 (M.D. Ala. 2009); *Chesson v. Rives*, 2017 NCBC LEXIS 113, at *3 (N.C. Super. Ct. Dec. 13, 2017).

24. "The compulsory counterclaim rule serves to make efficient use of limited judicial resources by avoiding multiple suits arising out of the same basic facts." *Static Control Components, Inc. v. Dallas Semiconductor Corp.*, 1:02CV1057, 2003 U.S. Dist. LEXIS 12313, at *18−19 (M.D.N.C. July 16, 2003). Federal courts consider

four inquiries to determine whether a claim and counterclaim arise out of the same transaction or occurrence:

> (1) whether the issues of fact and law in the claim and counterclaim are essentially the same; (2) whether res judicata would bar a subsequent suit on the counterclaim absent the compulsory counterclaim rule; (3) whether the same evidence would support or refute the claim and the counterclaim; and (4) whether there is a logical relationship between the claim and the counterclaim.

*Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir. 2006). "[T]hese inquiries work less [like] a litmus test and more [like] a guideline." *Id.* (second and third alterations in original) (quotation marks omitted). The tests should be applied flexibly to achieve the rule's purpose. *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 U.S. Dist. LEXIS 89632, at *9 (E.D.N.C. June 12, 2017).

25. Defendants argue that the factual and legal issues raised by AFS's claims in the Federal Action are the same as those raised by Core Techs's claims in this action. (Defs.' Br. Supp. Renewed Mot. Dismiss 7, 9, ECF No. 24.) Defendants point out that the allegations of AFS's complaint and the Declaration of Bobby Davis filed by Core Techs in the Federal Action are substantially similar to the allegations of Core Techs's First Amended Complaint in this action regarding the history of AFS, the relationship between the parties, Core Techs's alleged solicitation of AFS's customers, the May 2017 board meeting, the parties' attempted separation, and the alleged forced bargain sale of Core Techs's ownership interest in AFS. (Defs.' Br. Supp. Renewed Mot. Dismiss 7, 10–11.)

26. Even so, it does not necessarily follow that the claims in the two actions raise issues of fact and law that are essentially the same. *See Gammons v. Domestic*

*Loans of Winston-Salem, Inc.*, 423 F. Supp. 819, 821 (M.D.N.C. 1976) ("Although the claim and counterclaim arise from the same underlying business transaction, each raise issues of fact and law starkly different."). AFS's claims in the Federal Action concern AFS and Core Techs's independent contractor relationship pursuant to the MSA, Core Techs's use of the Trademarks, and Core Techs's solicitation of and representations to AFS's customers. The issues raised by the claims in the Federal Action include whether Core Techs used the Trademarks without AFS's authorization in a manner likely to cause confusion, the terms of the MSA and whether Core Techs breached those terms, whether Core Techs made fraudulent misrepresentations to AFS's customers and AFS, and whether Core Techs tortiously interfered with contracts or future contracts between AFS and its customers.

27. Conversely, Core Techs's claims in this action concern the relationship between Core Techs, Allegacy, and PLR as members of AFS, the Operating Agreement, and the control and operation of AFS. The issues raised by the claims in this action include whether the Operating Agreement was amended in 2012 and the validity of the 2017 amendments thereto, whether Allegacy and PLR owe Core Techs a duty of loyalty, and whether liquidation of AFS is necessary to protect Core Techs's rights and interests. In sum, the issues of fact and law raised by Core Techs's claims are not essentially the same as those raised by AFS's claims in the Federal Action.

28. As to the second inquiry, Defendants argue that res judicata would likely bar a subsequent suit on Core Techs's claims. (Defs.' Suppl. Br. Supp. Renewed Mot. Dismiss 6, ECF No. 39.) The Court disagrees. "Under the doctrine of res judicata or

'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004). "For res judicata to apply, a party must show that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both the party asserting res judicata and the party against whom res judicata is asserted were either parties or stand in privity with parties." *Williams v. Peabody*, 217 N.C. App. 1, 5, 719 S.E.2d 88, 93 (2011) (quoting *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413−14, 474 S.E.2d 127, 128 (1996)).

29. Assuming that the Federal Action resulted in a final judgment on the merits fully in favor of AFS on its claims raised in that action, res judicata would not bar Core Techs from bringing a subsequent suit on its claims because Core Techs's claims are entirely different from those asserted in the Federal action.

30. The third inquiry, whether the same evidence will support or refute the claims, also favors the conclusion that Core Techs's claims are not compulsory counterclaims. Defendants argue that Core Techs's improper conduct as alleged in the Federal Action is relevant to Core Techs's judicial dissolution claim as it seeks extraordinary equitable relief. (Defs.' Reply to Pl.'s Resp. Opp'n Defs.' Renewed Mot. Dismiss 4, ECF No. 29; Defs.' Suppl. Br. Supp. Renewed Mot. Dismiss 5.) Even assuming *arguendo* that Core Techs's improper conduct is relevant to its judicial dissolution claim, this evidentiary overlap between Core Techs's judicial dissolution claim and AFS's claims is not sufficient to transform Core Techs's claim into a

compulsory counterclaim. The Court believes, based on the record now before it, that evidence to support or refute Core Techs's claims in this action regarding AFS's Operating Agreement and Allegacy and PLR's alleged control and exploitation of Core Techs's membership interest in AFS will be different from the evidence to support or refute AFS's claims in the Federal Action regarding the MSA and Core Techs's alleged improper use of the Trademarks, fraudulent representations to AFS's customers and AFS, and solicitation of AFS's customers.

31. As to the fourth and final inquiry, the Court concludes that there is no logical relationship between Core Techs's claims and AFS's claims. Defendants argue that both Core Techs's claims in this action and AFS's claims in the Federal action arise from the deteriorating relationship between the parties, the parties' alleged improper actions, and the resulting harm to AFS. (Defs.' Br. Supp. Renewed Mot. Dismiss 9; Defs.' Suppl. Br. Supp. Renewed Mot. Dismiss 5.)

32. "Merely because two parties have a relationship, and the claims and counterclaims exist because of that relationship, does not show a logical relationship between the claims and counterclaims." *Eshelman*, 2017 U.S. Dist. LEXIS 89632, at *14. Indeed, in many cases, claims and counterclaims arise from a deteriorating relationship, alleged improper actions, and resulting harm to at least one of the parties. "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Mattel,*

*Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013). An examination of the claims asserted in the two actions reveals that there is no logical relationship between the claims. AFS's claims arise out of the parties' independent contractor relationship pursuant to and surrounding the MSA, while Core Techs's claims arise out of the relationship between Core Techs, Allegacy, and PLR as members of AFS pursuant to and surrounding the Operating Agreement.

33. In sum, the Court concludes that Core Techs's claims in this action are not compulsory counterclaims in the Federal Action.

**B.      Prior Pending Action Doctrine**

34. Defendants additionally argue that Core Techs's claims in this action involve the same subject matter as AFS's claims in the Federal Action and, as a result, the Federal Action abates this subsequently filed action by Core Techs pursuant to North Carolina's prior pending action doctrine. (Defs.' Br. Supp. Renewed Mot. Dismiss 8−10.)

35. "Under the law of this state, where a prior action is pending between the same parties for the same subject matter in a court within the state having like jurisdiction, the prior action serves to abate the subsequent action." *Eways v. Governor's Island*, 326 N.C. 552, 558, 391 S.E.2d 182, 185 (1990). "The 'prior pending action' doctrine involves essentially the same questions as the outmoded plea of abatement." *Dep't of Transp. v. Stimpson*, __ N.C. App. __, No. COA17-596, 2018 N.C. App. LEXIS 296, at *13 (N.C. Ct. App. Mar. 20, 2018) (quotation marks omitted). "The ordinary test for determining whether or not the parties and causes are the

same for the purpose of abatement by reason of the pendency of the prior action is this: Do the two actions present a substantial identity as to parties, subject matter, issues involved, and relief demanded?" *Shoaf v. Shoaf*, 219 N.C. App. 471, 475–76, 727 S.E.2d 301, 305 (2012).

36. The prior pending action doctrine applies equally to prior actions pending in a federal court within the territorial limits of the state. *Eways*, 326 N.C. at 559–61, 391 S.E.2d at 186–87; *see also Signalife, Inc. v. Rubbermaid, Inc.*, 193 N.C. App. 442, 443–44, 667 S.E.2d 499, 500 (2008) (citing *Eways*).

37. As discussed above, the Federal Action and this action arise out of different transactions and do not present substantially the same subject matter or issues. Accordingly, the Court concludes that the prior pending Federal Action does not abate this subsequent action for the same reasons it concludes that Core Techs's claims are not compulsory counterclaims in the Federal Action.

## VI. CONCLUSION

38. For the foregoing reasons, the Court **DENIES** the Motion.

**SO ORDERED**, this the 10th day of May, 2018.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
 for Complex Business Cases